I'm sorry. That's not the last case. The next case, there is one more after that. Case 12-5980, Ronnell Leberry v. John Howerton, oral argument, 15 minutes per side, with Martin for the appellant. Good morning. Henry Martin on behalf of Ronnell Leberry. There are two issues in this habeas corpus case before the court. The first is the certificate of appealability granted by the district judge addressed the issue of whether Martinez applies to Tennessee and then thus to this case. The second issue, we ask this court to expand the certificate and add to it the district court's denial of relief for ineffective assistance of counsel for the failure of trial counsel to request instruction as to accomplish testimony. Since the briefs were filed, this court has addressed and we believe resolved the question of the applicability of Martinez to Tennessee in the case of Sutton v. Carpenter and has resolved it we believe in our favor and has found that Martinez does apply to the structure and statutory basis of litigation in criminal cases in Tennessee. And therefore, we believe that the case should be remanded in reliance on Sutton back to the district court, not only as to the application of Martinez to these cases, but as to the question of whether or not the ineffective assistance of counsel determination on the failure to request an instruction was correct. But if we determine that either it wasn't deficient or it wasn't prejudicial, then does Martinez have any relevance? I mean, if we go to the merits in that sense, do we have to remand because of Martinez? There were other issues as to which the district court found that Mr. LeBerry was procedurally barred from raising those issues that we believe can be resurrected within Martinez' application to those issues. And the difficulty in addressing the merits of the ineffective assistance claim that's before the court now is that it bifurcates the determination and since Mr. LeBerry is entitled to have a prejudice analysis that looks at the cumulative effect of the various forms of ineffective assistance of counsel if found, if we're successful in reestablishing some of these IAC claims, the analysis of prejudice should not be compartmentalized by the issues before the court now and what issues we might be able to resurrect before the district court should be considered cumulative. And so that's why we would urge the court not to address the second issue at this time, but rather to include that in a remand to the district court. I really have just only a little elaboration since I know I can't expect the court to answer my proposal now. I need to address the possibility that you will go ahead and resolve the issues, the issue on the ineffective assistance. I will focus just briefly on the district court's analysis and my touching on this will address both the 2254D question as to what deference should be accorded to the state court's determination and to the district court's analysis of prejudice. We believe that the analysis of prejudice was far too limited and failed to consider a number of other factors and the factors that it did consider, it considered inappropriately. First, the state courts and the federal courts that addressed this reversed the basic analysis in determining whether or not there is sufficient corroboration of an accomplished testimony and instead talked about how the accomplice corroborated the testimony of the victim. Now to a certain extent that may well be semantics, but still it reflects a flaw in the analysis that would cause one to question further whether or not the analysis was full and complete and reliable. Further, the accomplice was disavowed by the prosecutor who tried the case in terms of her credibility. At one point in his closing argument, he says to the jury that you may discredit some of the things that Ms. Grant says to you. In fact, I don't believe everything that she said to you. So there is reason, even as early as the reliance on what the prosecutor said, to cast some doubt about the reliability of the testimony of the accomplice. Testimony of the accomplice is at variance with the testimony of the victim on several key points, particularly as to what Ms. Grant did or didn't do to the victim. Ms. Grant, who is the accomplice, said in her testimony, I never actually harmed this woman after I knocked her down and kicked her. I did not press this heated fork into her flesh. I did not have anything to do with the mop handle. The victim, however, says it was Ms. Grant, in her testimony, it was Ms. Grant who first applied the hot fork to her flesh. The victim didn't know who used the broom handle during the... Counselor, given what you said about the government, doesn't that undercut a little bit the question of how important it would have been had the instruction been given, that is, it wasn't a case where the government says the accomplice is absolutely right, and an instruction that said view it with caution or that you have to have some corroboration? No, sir. So in terms of the prejudicial effect, doesn't that undercut it to some degree? I don't believe it does. No, sir. I think that, if anything, gives this court a heightened reason to doubt that testimony, and the reason that that wasn't sufficient is that what an accomplice's instruction would have done would have said to the jury, not only do you just weigh this person's testimony with caution, you have to find that it's corroborated, and that's not said about any other witness, that's not said in the general instructions about witness credibility. But the degree of... I mean, correct me if I'm wrong about the law or my attitude toward it, that the question of corroboration is some corroboration, and the victim says he's there, as she does, isn't that some corroboration right there? I mean, it's not like you say, oh, he went out in the desert in the middle of the night and what the heck, he could have been in New York. He was there, that's corroborating to some degree the idea that he's there doing stuff to her. Well, the instruction would have also said, should have also said, and the Tennessee law is the corroboration, I'm sorry, that word gets tangled up with me, has to occur as to every count of conviction. There were, I believe, either five or six counts of conviction. There was no instruction to the jury that they would have to find corroboration at all, much less as to every count in the conviction. What about State v. Bernard that talks about that an accomplice's testimony is deemed sufficiently corroborated by evidence that places the defendant at the scene of the crime as described by the accomplice? Because you have both Christy Clinton and Latosha Duncan placing him at the scene of the crime. Yes, ma'am. Again, that does not address the fact that there are multiple counts of conviction. I don't remember in the Bernard case whether there was one count, you know, one charge for which that person was on trial or multiple charges. But they're all counts related to activity at those two locations at which other witnesses have placed him? Is that not correct? Well, except actually, and this is just almost beside the point, the charges on which the trial occurred only addressed what happened at the first location. There's a whole other issue that unfortunately is not before the court. Why isn't that corroboration as to every count in the sense that his actions at that location are involved in every count? Are they not? I mean, this is not like writing a check or something. Yes, sir. There's no question he was there. He was present for all of the counts for which he was convicted. The question is what his role was. The proof was also without question that the accomplice is the one who started the aggression. She initiated the confrontation with the victim. She went into the apartment with the victim. There's a dispute as to whether or not the client followed in immediately or came along later. She assaults the victim. She knocks her down, knocks her to the floor, kicks her several times. At some point after that, there begins to be some discussion about what role Mr. LeBarry played in it. So, it's critical, and the different counts of conviction occurred at different times during this. So, it's critical as to each count of conviction that there be corroboration that at the point that this assault occurred, this offensive conduct occurred, that Mr. LeBarry was participating in it knowingly and willfully in it. Does Tennessee require that the statements of what is corroborative, what is acceptable as corroboration in the state of Tennessee are pretty light, shall we say. So, if Bernard says, good enough if you show he was there, doesn't that cover everything that happened at that site? And I think Hawkins v. State, you know, help me understand why you qualify when Tennessee itself says, here is what corroboration is, and it is, frankly, absolutely nominal. Well, I think, again, because there are separate counts of conviction, and that the corroboration also is required to establish the identity of the defendant as the perpetrator, and mere presence would not be enough to establish guilt. There has to be corroboration that identifies him as the perpetrator, not that he was there as a bystander. And I think the fact that there is, the jury even doubted that there was, doubted the accomplice in finding the only facilitation as to the aggravated rape. And so I think that Tennessee law would not allow a conviction to go uncorroborated when there are separate counts of conviction. Do you recall a particular case that might really make clear that count issue? I'm looking at Hawkins v. State, which is Criminal Court of Appeals in 71, and then Bernard in 94. So these are older cases. If you desire to rely on your brief, I can go back and check, but if something comes to mind. I do know there is a case where Tennessee requires corroboration as to each count of conviction. Okay. And I think that if the jury had been told there must be corroboration as to each count of the conviction, since the jury struggled with at least two of those counts of conviction as to who the perpetrator was, when they find Mr. LaBerry guilty of facilitation, then somebody else had to commit the offense, and the only other person that could have been is the accomplice who denied having committed those particular offenses. And again, in determining whether or not he suffered prejudice from lack of this, there are other ineffective assistance of counsel issues that we believe will be before the district court on remand that would also contribute to the analysis of prejudice, and that case ought to be resolved as a whole and not in basemail. Thank you, counsel. Do we have any remaining time for rebuttal? If I may, I will address the exhausted claim or issue first regarding the exhausted claim. I think to highlight or pick up from what Judge Strange said, Tennessee law is clear that the corroborating evidence can be very nominal. It can be slight. It can be entirely circumstantial. It can be entitled, when standing on its own, to little or no weight. But does it have to relate to each individual count? The respondent doesn't disagree that it's the evidence that there's some corroboration as to each count. So presence there would not be appropriate corroboration for all the varied accounts in this case? It may, though, because the same evidence can apply to various counts versus just you don't need separate evidence to corroborate each count. You have the same evidence that could go across counts. And presence certainly is a very substantial portion of the corroboration, and the case law is clear on that. I think it's state B, big B, that the evidence must show, doesn't have to be insufficient to itself, but it must show that some sort of act, or lead to an inference at least, the criminal act occurred, and that the defendant, in this case the petitioner, is implicated in that act. Well, the additional witnesses that we talked about, Clinton and Duncan, didn't particularly Duncan only have information about the invitation extended to other people in the complex to engage in sexual activity with this woman, which was not at the location in question. Isn't that right? That is correct, Your Honor. That is absolutely correct. However, what that testimony, along with other testimonies, shows is that the petitioner was working in concert with D. Grant, his accomplice, to undergo the various acts that were taken. We have evidence that showed that he was waiting in the apartment for the victim when she arrived. We have the neighbor who testified that she witnessed the argument that ensued, and she heard screams once they got into the apartment. We have the victim, of course, who testified about what happened inside the apartment. The victim testified multiple times that the petitioner told her to get undressed in the kitchen. One time she said she didn't know who said that, but she testified both prior to that and subsequent to that testimony that the petitioner and Ms. Grant both told her to get undressed in the kitchen. She testified that the petitioner and Ms. Grant took turns heating up the fork and burning her breasts and vulva area with that fork and causing her extreme burns and pain. All the evidence there suggests that this was done in concert, that he was not an instant bystander, I think was the phrase that was used just now, that he was working in concert with this and he was there. There is no question that Mr. Lieber was there in connection with this mop handle, but the jury at this point would be left with two options. They'd say, well, either Mr. Lieber, the petitioner, wielded the mop himself, which would have been rape, or he provided assistance by blocking her in the kitchen, by burning her, by basically breaking her down, but provided assistance for the rape. That is the facilitation. The jury chose the lesser of the two. They chose the facilitation. But there is certainly corroboration evidence from the victim, if nothing else, to support a facilitation conviction, which is what he was convicted of. Certainly we have corroboration for the facilitation for aggravated rape counts, including the second count. The Ms. Grant's testimony was that the mop was inserted once, more gently, was retrieved out, there was discharge found on it, which then it was the petitioner's speculation that it indicated a sexually transmitted disease, and therefore inserted it much more roughly, and which caused her to scream. We have medical testimony which provides some corroboration in that regard, in that when she was seen medically after this episode, they found, A, they found bruising on the cervix, which the medical expert testified that indicated something very hard was shoved inside her, and not indicative of normal intercourse. And they found presence of sexually transmitted disease, which was, so again we have corroboration medical evidence there, which would corroborate Ms. Grant's story in this regard. So both facilitation counts we have sufficient evidence, we have sufficient corroboration evidence. It doesn't have to be sufficient unto itself, but it's enough under Tennessee law to corroborate. I want to address the question about these other claims, where their position seems to be that we shouldn't look at any of this, because there are a bunch of other claims that need to go back, and it all ought to be looked at together. What's your position on that? The position is that, the respondent submits that Sutton v. Carpenter, which came out two weeks after we submitted our brief, resolves the question of whether Martinez and Trevino apply in Tennessee. It does. However, in this case, the claims at issue, the defaulted claims at issue, were also found to be time barred under the statute of limitations. The magistrate judge indicated that, or put that in the report and recommendation, it's in there. It says all ineffective assistance claims filed after the initial petition, which those claims were, fell outside the statute of limitations and did not relate back. The district court judge, there was no objection on that basis by the petitioner. Did not object. District court judge put it in the order, says we accept the report and recommendation, and we adopt it. That finding was accepted with no objection whatsoever. So in your view, that gets rid of all the other claims that we're talking about now, except for the instruction? Absolutely, Your Honor. It was properly dismissed under an independent and adequate procedural ground. So there would be no judicial economy served in sending it back to re-evaluate the procedural default when they're already dismissed otherwise. Is there any additional argument that you have in response to the suggestion that the analysis of prejudice should be cumulative, cumulative factually made by the district court judge, I think is the argument, in addition to the fact that there are other IAC claims that might be brought? No, we don't. I don't think we dispute that you can look at prejudice over ineffective assistance. You can look at prejudice, perhaps, cumulatively, just within an ineffective assistance claim. I don't believe we dispute that. However, in this case, it's a rather moot issue because there's only one live claim to analyze the prejudice issue. So in order to consider the cumulativeness issue, you would have to undo the untimeliness finding? That's correct, Your Honor. I'd say just very briefly that even the petitioner seems to concede that for many of the counts, there was corroboration. It was extortion. He concedes in his reply brief there was corroboration. He says in the aggravated assault and especially aggravated kidnapping, he says there was, I believe, impeached corroboration or not clear corroboration. Impeachment doesn't matter under Tennessee law. It can be impeached. It makes no difference. So long as there is some corroboration, that is all you need. So those, even really by the petitioner's own reply brief, those accounts, there was sufficient corroboration. Because of that, there was no reasonable probability that had this jury instruction been given, that the outcome of trial would have differed. And that is what the state court found. That is what the district court found. It was a reasonable application strictly to be Washington. For that, for those reasons, I would like to ask that the court affirm the judgment of the district court. Okay. Thank you, counsel. Mr. Martin, you have time for rebuttal. Two points. First, I disagree with adversary counsel on the statute of limitations ruling. What the magistrate judge ruled and as affirmed by the district judge, is that the pro se petition filed by Mr. Liberi was timely filed and that all issues raised in that are within the statute of limitations. Now, I have to concede that later on in that report, the magistrate judge in a combined discussion of procedural default and statute of limitations does refer to some of the issues that we think are still potentially alive issues as being time barred, but that's inconsistent with his flat, clear ruling that everything in the pro se petition is timely filed. And even if we should have objected to that and failed to, the state did not object to the magistrate judge's clear finding that all issues in the pro se petition are timely filed. And even if we should have objected to the inconsistency, then the judge's finding that some of the issues that are in fact in the pro se petition are not timely filed is clearly erroneous. In the pro se petition, which is fairly lengthy, Mr. Liberi, in addition to complaining about the issue that's here substantively, said that his counsel was ineffective for failing to adequately impeach the victim in the case. His counsel was ineffective for admitting to the jury that he had engaged in facilitation to commit rape, that counsel was ineffective for not having made any opening statement at the trial, and that counsel was ineffective because he did not call any witnesses. In your view, if all of those were timely and were ruled on below, then should they have all been briefed and be before us now as well? Well, we didn't ask for those two. We asked for the certificate of appeal to be expanded only as to the one issue that's before the court. Well, but also there's also procedural default issues as to those claims. At least two of those the judge did find. That's why his ruling is kind of convoluted because he also addresses that in the context of what is procedurally defaulted. He found that at least two of these were procedurally defaulted as well, which would require remand for a Martinez application. I guess maybe I'm just confused in the sense of there's the question of whether Martinez applies at all, but these claims were before the court below, and so if you didn't get a certificate of appealability on them independent of the, and didn't ask for one I guess, maybe I'm wrong, independent of the abstract procedural question about Martinez, then why should they be considered as before us? We took the position that the clear statement in the reporting recommendation, all issues raised in the pro se petition are timely filed. We relied on that. But then, and again tell me if I'm missing a procedural point, why shouldn't you have said we rely on that and therefore we want a certificate of appealability so we can raise them on the merits before the court of appeals? Well, the district judge didn't address the issue. In the opinion from which we appealed that's not addressed. Well, but I mean, so does that mean that he adopted the magistrate judge on that or not? He adopted the overall reporting recommendation. So that then if that's the case, I'm sort of going back to am I missing a procedural point about if you wanted those to be alive and before us on the merits, and either you didn't get or didn't ask for a certificate of appealability, why aren't they gone? Am I just missing something here? I mean, it seems to me that if they're live merits claims in your view, live in the sense that they were timely filed and not granted by the district court, then wouldn't the procedure then to be to appeal to us against their failure to grant them? It sounds like what you're saying is well, they're floating around below and because of Martinez we can go back and start over with anything that was floating around below, whether we appealed it or asked for a certificate or anything. I just think that that's an issue that would be better resolved by the district court initially, a full analysis of the… Okay, anything else? No, sir. Okay, thank you, counsel. That case will be submitted. Clerk may call the last case.